Suzanne MARCUS, as the Personal Representative of the Estate of Stanley P. Rhein, Plaintiff,

v.

Charles O. DeWITT, District Director, Southeast District, Internal Revenue Service, Defendant.

No. 80–567–Orl–Civ–R.

United States District Court, M. D. Florida, Orlando Division.

Sept. 4, 1981.

Robert G. Murrell, of Sam E. Murrell & Sons, Orlando, Fla., for plaintiff.

Ileana M. Romeu, Tax Division, Dept. of Justice, Washington, D. C., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., for defendant.

## MEMORANDUM OF DECISION

JOHN A. REED, Jr., District Judge.

Suzanne Marcus is the personal representative of the estate of her father, Stanley P. Rhein. In that capacity and acting under a court order authorizing and directing the sale of real property, plaintiff sold a house which was property of the estate. In selling the house, plaintiff incurred expenses amounting to $1,881.80 for a real estate commission, tax stamps on the deed, and a closing fee charged by a law firm. See Closing Statement, exhibit C to the complaint.

In January 1977, plaintiff filed a United States Estate Tax Return on behalf of the estate. She deducted $1,881.80 from the total gross estate as a "net loss during administration." The Internal Revenue Service (IRS) disallowed the deduction on the basis that the sale of the property was not necessary since the estate had sufficient separate liquid assets to pay the decedent's debts and taxes. See pre-trial stipulation at 2. Plaintiff invokes this court's jurisdiction under 28 U.S.C. § 1346(a)(1) to obtain a refund of $445.60, representing the estate tax deficiency and interest which the estate paid on the disallowance of the deduction.

The general issue to be decided is whether the estate of Stanley P. Rhein is entitled to deduct, pursuant to 26 U.S.C. § 2053(a)(2), expenses incurred in the sale of estate property. Specifically, this court must decide if there remains a genuine issue of fact as to whether the selling expenses were necessary in order to effect a distribution of the property to the person entitled to it, or instead were incurred solely for the individual benefit of the devisee.

The general rule is that administration expenses may be deducted from the gross estate as are allowable by the laws of the jurisdiction under which the estate is being administered. 26 U.S.C. § 2053(a). Florida law authorizes the payment of administration expenses. Fla.Stat. § 733.707(1)(a). It is not contested that costs incurred in a sale authorized and directed by the Circuit Court and found to be in the best interest of the estate are costs of administration. Nonetheless, the amounts deductible as administration expenses are limited to expenses actually and necessarily incurred in the administration of the estate, including the distribution of property to the persons entitled to it. 26 C.F.R. § 20.2053–3(a). Expenditures which are "not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions." Id. Expenses for selling estate property, including brokerage fees, are deductible if the sale is necessary in order to effect distribution. 26 C.F.R. § 20.2053–3(d)(2).

In *Pitner v. U. S.*, 388 F.2d 651 (5th Cir. 1967), the court rejected the government's contention that legal expenses incurred by heirs to the estate were not essential administrative expenses, but rather were incurred solely for the benefit of the heirs. The court held that although plaintiffs were acting in their own self-interest in instituting a suit, the legal expenses associated with the suit were essential to the settlement of the estate. The expenses were essential because the litigation in which the expenses were incurred facilitated the distribution of property to the persons properly entitled to it. *Id.* at 660. Plaintiff Suzanne Marcus argues that the sale of property in which the closing expenses were incurred facilitated the distribution of the estate property to the person entitled to it, and are, therefore, deductible expenses as in *Pitner.* In paragraph 7 of plaintiff's affidavit, she states that

the real property ordered by the Court to be sold consisted of a residence which was unoccupied and non-income producing and which was rapidly depreciating in value, as well as requiring expenses for upkeep and lawn care, so that it was necessary to sell said real property pursuant to the offer to obtain the highest

price to preserve and protect the value of the estate, and had the real property not been sold at that time, the depreciation and cost of upkeep would have resulted in a loss of value to the estate.

That the property was unoccupied and non-income producing was plaintiff's own choice. Plaintiff might have obtained an order authorizing her to occupy the house herself until the estate was settled, or to rent it to produce income to the estate. Plaintiff was the sole beneficiary of the estate. See Estate Tax Return, at 2, ¶ 10. She resided in Little Rock, Arkansas. Although it was probably more convenient to plaintiff to receive the estate in the form of cash than in the form of Florida real estate, the sale of the house and the related expenses were not *necessarily* incurred in effecting the distribution of the property to plaintiff. Distribution could as easily have been effected in kind. Since the sale of the house prior to distribution of the estate was solely for the individual benefit of plaintiff, the estate is not entitled to a deduction for the expenses incurred in the sale.

The expense incurred by plaintiff in selling her father's house is distinguishable from the deductible expense in *Pitner, supra.* In *Pitner,* the litigation and associated legal fees were essential in order to ascertain who were the heirs so that proper distribution could be made. In that way, the necessary litigation and related legal fees facilitated the proper distribution of property. Proper distribution of the property could not have been made absent the litigation. Proper distribution of Stanley P. Rhein's house, however, could have been made without the sale and concomitant expenses.

It, therefore, appears from the record that there is no genuine issue as to any material fact, and the government is entitled to judgment as a matter of law.